UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO.  04-261

DARLENE CORNETT,                                                                    PLAINTIFF


v.                                    **ORDER & OPINION**


DENNIS W. BYRD, *in his individual capacity,*
JOHN D. MOUNTJOY, *in his individual capacity,*
DWIGHT JONES, *in his individual capacity,*
JOHN A. JEFFRIES, *in his individual capacity,*
ROGER C. FAULKNER, *in his individual capacity,*
CARROLL LUNCE, *in her individual capacity,*
BOARD OF EDUCATION OF WILLIAMSBURG
INDEPENDENT SCHOOL DISTRICT,                                          DEFENDANTS

* * * * * * * * *

This matter is before the Court on Defendants' Motion for Summary Judgment. (Rec. No. 26). For the reasons stated below, the Court GRANTS the Motion in part and DENIES in part.

## I.  FACTUAL BACKGROUND

The Plaintiff, Darlene Cornett ("Cornett") was hired by the Williamsburg School District in March, 2001 as the Chief Information Officer ("CIO"). (Rec. No. 32, pg. 1). Cornett was hired for the position by the the Board of Education of Williamsburg Independent School District ("Williamsburg Board of Education"), through its Superintendent, Paul Falin ("Falin").

According to Cornett, in order to lure her to accept the position, Falin promised her that upon her acceptance, she would be granted four years "credit" for her prior experience as a technology coordinator for the Clay County School District from 1994-1998.  (Rec. No. 32, pg. 2). Cornett signed a written contract for one year, which also included a salary schedule form that contained

notations on the side from Falin. (Rec. No. 32, pg. 2).  These notations indicated a desire to consider Cornett an employee with four years experience and a corresponding commensurate salary. (Rec. No. 32, pg. 2). Cornett considered Falin's promise to give her four years of salary and service credit as a form of "tenure." (Rec. No. 32, pg. 3). After signing the contract, Cornett began her work as CIO. Falin praised Cornett for her work in the position. (Rec. No. 32, pg. 4).

During the Spring of 2002, the Williamsburg School District created a new network technician position, designed to assist Cornett in the completion of the various technological projects.  *Id.* at 8. A committee was formed for the purpose of selecting someone to fill the position and at the end of the process, Troy Schafer was ultimately hired.  Soon thereafter, Superintendent Falin retired and was replaced by Dennis Byrd ("Byrd"), who then became the supervisor of Cornett. *Id*. at 6.

Over the course of the 2002-2003 school year, Cornett alleges that her conditions of employment underwent dramatic changes.  She claims that Superintendent Byrd "did not treat her as professionally or respectfully as he seemed to treat other male, district-wide administrative employees." (Rec. No. 32, p.6).  She alleges that Byrd's speech was often abrupt, his tone hostile and his demeanor and mannerisms were abrasive.  She claims that he used his larger physical presence for intimidation purposes and often unduly criticized her work. *Id*. at 7.  Cornett claims that all of her interactions with Byrd suggested a view that he preferred working with males in administrative positions. *Id*. at 8.

In November, 2002, Troy Schafer resigned as Cornett's technological assistant and was replaced by Steve Mosley ("Mosley"). (Rec. No. 32, pg. 9).  Cornett claims that Mosley was incompetent in the area of troubleshooting, a primary duty of the technology assistant. *Id*. at 10.  For

the rest of the 2002-2003 school year, Cornett and Mosley worked together as the technology team for the Williamsburg schools. As the school year came to a close, Cornett was not given a regular evaluation of her job performance as dictated by school policy. *Id*. at 11.

On April 23, 2003, Cornett received a letter which informed her that her contract with the Williamsburg Independent School District would not be renewed. (Rec. No. 32, pg. 12). The letter stated that the action was being taken due to the "uncertainty of funding and possible drop of enrollment in the Elementary School for the 2003-2004 school year." *Id*.  The letter also noted  that if she wished to be considered for any vacancies for the 2003-2004 school year, she could inform the Superintendent and her resume would be kept on file.  Soon thereafter, Cornett contacted the Superintendent's Office and requested the ability to pursue continued employment with the school district. *Id*.  On June 23, 2003, Cornett was notified that she must report to the Superintendent's Office on the last day of the school year to turn over any passwords and to share any information "that would be beneficial to our school's technology department with Steve Mosley."  *Id.* at 13.

In July, Superintendent Byrd hired Mosley as the replacement CIO for a slightly higher salary than had been paid to Cornett. (Rec. No. 32, pg. 13). After becoming aware of this development, Cornett contacted her union representative and then made a written request to Superintendent Byrd pursuant to what she believed to be her rights under K.R.S. 161.011, a statute that provides tenure for classified employees with four years of continuous service, for a statement regarding the anticipated drop in enrollment and how it effected her particular position. *Id*.  The Williamsburg School District responded through its attorney, stating that Cornett did not enjoy tenure under KRS § 161.011 and that he considered Byrd's action proper. *Id*. at 15.

Cornett filed a charge of discrimination with the United States Equal Employment

Opportunity Commission ("EEOC"), and on March 10, 2004, the Commission issued her a "right to sue" letter. (Rec. No. 32, pg. 17).

Plaintiff then filed this action, making a number of claims concerning her termination. She alleges violations of her due process rights, gender discrimination, sexual harassment, outrageous conduct, abuse of an administrator, negligent failure to supervise and conspiracy against Superintendent Byrd and the members of the Williamsburg School Board. After a period of discovery, on April 6, 2006, the Defendants moved for Summary Judgment. It is this motion that the Court now reviews.

## II. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot

rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.*

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

## III. ANALYSIS

Over the course of this litigation, Cornett has raised many claims against the Defendants. The claims are analyzed individually below.

**a. Conspiracy Claim pursuant to 42 U.S.C. § 1985**

In the Complaint, Cornett stated that the Defendants terminated her employment through a conspiracy between the Defendants and other persons or officials in an effort to deprive Plaintiff of her civil rights in violation of 42 U.S.C. § 1985. Plaintiff must establish the following in order to assert a claim under § 1985:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a resulting injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. A plaintiff also must show that the conspiracy was motivated by racial or other class-based invidiously discriminatory animus.
> *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) (citations omitted).

Cornett has simply made a broad statement regarding an alleged conspiracy between the Defendants and has failed to point to any act in furtherance of a conspiracy and has failed to properly allege that the conspiracy was motivated by gender discrimination. Cornett, in fact, assumes that she has not produced sufficient evidence of an agreement between Byrd and other officials. (Rec. No. 32, pg. 19). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**b. Hostile Work Environment Sexual Harassment Claim pursuant to Title VII**

"In order to bring a hostile work environment sexual harassment claim, a plaintiff must show the following: (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged

sexual harassment created a hostile work environment; and (5) the existence of employer liability."

*Vickers v. Fairfield Medical Center*, 453 F.3d 757, 762 (6th Cir. 2006).

Plaintiff must show that the Defendant's conduct was objectively and subjectively severe or pervasive enough to create a hostile work environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). A "mere utterance of an ⋯ epithet which engenders offensive feelings in a employee," is not sufficient to implicate Title VII. *Id*. at 21 *quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986).

Cornett claims that Byrd did not treat her professionally or respectfully, his tone  was often abrupt, and his demeanor and mannerisms were abrasive. (Rec. No. 32, p.6-7). However, Cornett's claims do not meet the standard set forth in *Harris* and Cornett herself assumes that she has not presented sufficient evidence to sustain this claim, thus, the claim is dismissed. (Rec. No. 32, pg. 19).

### c. Abuse of a Teacher Claim pursuant to KRS § 161.190

The Defendants argue that Cornett's claim under KRS § 161.190 must be dismissed because the statute is a criminal statute and it has been declared unconstitutional. (Rec. No. 45, pg. 5).

Kentucky Revised Statute § 161.190 states as follows:

Whenever a teacher or school administrator is functioning in his capacity as an employee of a board of education of a public school system, it shall be unlawful for any person to direct speech or conduct toward the teacher or school administrator when such person knows or should know that the speech or conduct will disrupt or interfere with normal school activities or will nullify or undermine the good order and discipline of the school.

The court in *Com. v. Ashcraft*, 691 S.W.2d 229 (Ky. Ct. App. 1985), found the *former* KRS § 161.190 unconstitutional. The former statute provided:

No person shall upbraid, insult or abuse any teacher of the public schools in the presence of the school or in the presence of a pupil of the school.

Thus, KRS § 161.190 has been amended since the decision in *Com. v. Ashcraft* and the current statute has not been ruled unconstitutional. KRS § 161.190 imposes a criminal penalty for violation of the statute. *See* KRS § 161.990 ("Any person who violates any of the provisions of KRS 161.190 shall be guilty of a Class A misdemeanor"). However, Kentucky case law suggests that plaintiffs can assert violations of KRS § 161.190 in a civil actions. *See Ammerman v. Board of Educ., of Nicholas County*, 30 S.W.3d 793 (Ky. 2000)(A teacher brought a civil action against the school board based on many claims, including violation of KRS § 161.190. The claim was ultimately dismissed on the basis of sovereign immunity).

Cornett was hired as Chief Information Officer, whose main duties included overseeing the school computer system and related technology. (Rec. No. 32, pg. 4). Cornett claims that she was not treated professionally or respectfully by Byrd and that Byrd's speech was often abrupt and hostile. (Rec. No. 32, pgs. 6-7). However, a claim pursuant to KRS § 161.990 requires the plaintiff, who must be a teacher or school administrator, to prove that the defendant directed speech or conduct toward him or her that the defendant knows or should know would disrupt school activities or interfere with the order and discipline of the school. Cornett has failed to point to any facts which would suggest that the Defendants' actions or words toward her disrupted or interfered with *school activities*. "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Thus, Cornett's claim must be dismissed.

8

**d**. **Breaches of the Duty of Good Faith and Fair Dealing Claim**

Cornett alleges that the Defendants' conduct in terminating her employment constitutes a violation of the Defendants' implied duty of good faith and fair dealing and that such conduct has caused her extreme emotional, mental and physical distress and humiliation. (Rec. No. 1, Complaint, pg. 7).   Cornett had a one year contract with the school district that was not renewed for the next year (Rec. No. 1. pg. 6). Cornett does not allege breach of contract by the Defendants. Instead, Cornett alleges breach of the implied duty of good faith and fair dealing in terminating her employment. "Within every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out. " *Farmers Bank and Trust Co. of Georgetown v. Willmott Hardwoods, Inc*., 171 S.W.3d 4, 11 (Ky. 2005).

In *Farmers Bank and Trust Co. of Georgetown*, the Supreme Court of Kentucky held that a bank did not breach the implied covenant of good faith and fair dealing because the contract with the customer expired, therefore, the bank had a contractual right to terminate the agreement. 171 S.W.3d at 11. In this case, Cornett's contract with the school district expired and Cornett does not allege that the Defendants did not have a *contractual* right to terminate the contract. "An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Id*. at 11. Thus, Cornett's claim for breach of the implied covenant of good faith and fair dealing must be dismissed. *See also Wyant v. SCM Corp*., 692 S.W. 2d 814, 816 (Ky. Ct. App. 1985)(Holding there was no cause of action for violation of the implied duty of good faith and fair dealing in the employment context even where plaintiff asserted tenure); *Pierce v. Commercial Union Ins. Companies*, 1999 WL 33756659 (W.D.Ky. 1999)(unpublished)("Kentucky has no implied covenant of good faith and fair dealing with respect to employment rights").

9

**e. Outrage Claim pursuant to Kentucky Law**

Cornett admits that the sole basis for her outrage claim is based upon her contention that Byrd's stated reason for terminating her was false and a pretext for unlawful gender discrimination. (Rec. No. 32, pg. 19). In *Wilson v. Lowe's Home Center*, 75 S.W.3d 229 (Ky. Ct. App. 2001), the court held that when an outrageous conduct claim and a claim pursuant to the Kentucky Civil Rights Act are brought concurrently, the outrageous conduct claim must be dismissed because the Kentucky Civil Rights Act preempts the latter. "*Wilson* is clear and unambiguous in its holding that a KRS Chapter 344 claim preempts a common law IIED/outrageous conduct claim." *Kroger Co. v. Buckley*, 113 S.W.3d 644, 647 (Ky. Ct. App. 2003). *See also Wiseman v. Whayne Supply Co.*, 359 F.Supp. 2d 579, 592 (W.D. Ky. 2004). Cornett has filed a gender discrimination claim pursuant to the Kentucky Civil Rights Act, thus, the outrage claim is preempted and dismissed.

**f. Gender Discrimination under Title VII (42 U.S.C. § 2000e *et seq.*)**

Cornett claims that she suffered gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act when the Williamsburg School District made the decision to terminate her employment. Cornett has admitted that she has no direct evidence of discrimination (Rec. No. 32, pg. 25), thus, her claim must be evaluated under the burden-shifting standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Pursuant to *McDonnell Douglas*, the Plaintiff must first establish a prima facie case of discrimination "by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Restaurant, Ltd*., 61 F.3d 1241, 1246 (6th Cir. 1995). To prove such a circumstantial case the plaintiff must show:(1) that she is a member of a protected group, (2) that she was subject to an adverse employment decision, (3) that she was qualified for the

10

position, (4) that she was replaced by a member outside the protected class. *Id.*

In this case, Cornett meets all four criteria to establish a prima facie case of gender discrimination. She is a female who was replaced from her job as technical advisor for the Williamsburg School District. (Rec. No. 32, pg. 26). Falin, who served as Cornett's supervisor until July 1, 2002, stated that Cornett did an outstanding job as CIO. *Id.* The Defendants do not contest Cornett's qualifications. (Rec. No. 32, pg. 26). Upon termination, Cornett was replaced by a male. *Id.* Thus, Cornett has met her prima facie burden.

"Once the plaintiff has established a prima facie case, which creates a presumption that the defendant unlawfully discriminated against the plaintiff, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's rejection." *Talley*, 61 F.3d at 1246. In this case, the Defendants have met this burden by stating that the reason Cornett's employment contract was not renewed was because of lack of funding. (Rec. No. 27, pg. 16). Defendants claim that there were budgetary problems that required the reduction of staff, therefore, the two technology positions, network coordinator and network technician, needed to be reduced to only one position. (Rec. No. 27, pg. 2).

"If the defendant offers a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the discrimination was a determinative factor in his termination." *Talley*, 61 F.3d at 1246. "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race." *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996). In order to make this showing, Cornett may prove either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reason did not actually motivate the discharge, or (3) that they were insufficient

11

to motivate the discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). A plaintiff can also prove discrimination by showing that the employer's explanation is "unworthy of credence." *Thurman*, 90 F.3d at 1166.

Cornett argues that lack of funding was not the true motivating factor for the Defendants' decision. Cornett claims that the Defendants failure to post the CIO job vacancy to the public before hiring Mosley and the fact that Williamsburg School District letterhead, reflecting Mosley as the new CIO, circulated days after Cornett's departure both point to unlawful gender discrimination not lack of funding. (Rec. No. 32, pg. 15). Furthermore, Cornett claims that the Defendants did not have any information indicating a drop in funding at the time of her termination and Defendants have contradicted themselves throughout this litigation regarding the reason for replacing Cornett. (Rec. No. 32, pg. 31-35).  According to Cornett, the only information that was available at the time of her termination reflected an increase in funding. *Id*.

Cornett alleges that she was treated differently than male employees. (Rec. No. 32, pg. 6). Cornett states that Byrd's conduct toward her was hostile and abrasive and that Byrd made technology-related decisions with subordinate male employees without her input. *Id*. Cornett further alleges that Byrd used his physical presence to intimidate her. *Id*.  Cornett argues that Byrd refused to allow her to perform certain job duties, however, her male replacement was permitted to perform such duties. *Id*. at 8.

The Court finds that Cornett has sufficiently met the burden under *McDonnell Douglas* in order to proceed past this summary judgment stage. "The role of the judge at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial." *Talley*, 61 F.3d at 1245. Cornett has established a prima facie case of gender discrimination and has

12

provided evidence that the Defendants' proffered reason for termination had no basis in fact, did not motivate the charge and/or is "unworthy of credence." *See Manzer*, 29 F.3d at 1084; *Thurman*, 90 F.3d at 1166.

**g. Gender Discrimination under Kentucky Civil Rights Act (KRS 344.010)**

"In order to establish violation of the Kentucky Civil Rights Act, a plaintiff must prove the same elements as required for a prima facie case of discrimination under Title VII." *Talley*, 61 F.3d at 1250. The Court found that Cornett provided sufficient evidence to establish a claim of gender discrimination pursuant to Title VII, thus, Cornett has likewise provided sufficient evidence to proceed with her claims under the Kentucky Civil Rights Act.

**h. Plaintiff's Property and Civil Rights under the Fifth and Fourteenth Amendments in violation of 42 U.S.C. § 1983**

Cornett claims that her Due Process rights under the Fifth and Fourteenth Amendments to the Constitution were violated when she was terminated. The Due Process Clause "provides that certain substantive rights – life, liberty and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). "This court undertakes a two-step analysis when considering claims for the violation of due process rights. The first step determines whether the plaintiff has a property interest entitled to due process protection. Second, if the plaintiff has such a protected property interest, this court must then determine what process is due." *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004)(citations and internal quotation marks omitted).

In regard to the first step of the inquiry, Cornett claims that she had a property interest in her employment and that this interest is protected by the Due Process Clause. (Rec. No. 32, pg. 20). "The

existence of a property interest depends largely on state law. Government employment amounts to a protected property interest when the employee is entitled to continued employment. Neither mere government employment nor an abstract need or desire for continued employment will give rise to a property interest." *Bailey v. Floyd County Board of Education*, 106 F.3d 135, 141 (6th Cir. 1997)(citations and internal quotation marks omitted). In order to establish a property interest, Cornett must point to some statutory or contractual right which supports a legitimate claim to continued employment. *Id*.

Cornett alleges that she is entitled to the protections afforded by K.R.S. § 161.011. (Rec. No. 32, pg. 21). Kentucky Revised Statute § 161.011 provides in relevant part:

> (5) Local districts shall enter into written contracts with classified employees. Contracts with classified employees *shall be renewed annually except* contracts with the following employees:

> (a) *An employee who has not completed four (4) years of continuous active service*, upon written notice which is provided or mailed to the employee by the superintendent, no later than April 30, that the contract will not be renewed for the subsequent school year...

Ky. Rev. Stat. § 161.011 *amended by* 2006 Kentucky Laws Ch. 211 (SB 105)(emphasis added).

Cornett alleges that she was a "classified employee" within the meaning of the statute and entitled to continued employment. (Rec. No. 32, pg. 21). A classified employee with four years of continuous service under K.R.S. § 161.011 has a protected property interest in that employment. *Branham v. May*, 428 F.Supp. 2d 668 (E.D.Ky. 2006). However, Cornett admits that she was not employed by the Williamsburg School District for four consecutive years and the statute specifically exempts employees with less than four years continuous active service. (Rec. No. 32, pgs. 1-2). Cornett alleges that she is entitled to the protections of K.R.S. § 161.011 because she was promised four years of "credit" for both salary and continuous active service purposes when she accepted the

14

job as CIO. *Id*. As support for this claim, she points to the salary chart, which was attached to her written employment contract, where Superintendent Falin placed her name next to a year four payment schedule, thus, indicating that she was deemed to have four years experience. (Rec. No. 32, pg. 20).

Cornett cannot rely on Kentucky Revised Statute § 161.011 to establish a protected property interest in her employment as CIO because the plain language of the statute specifically exempts Cornett and does not provide protection for an employee who is simply promised "credit" for four years experience. Despite the fact that Cornett cannot claim a property interest pursuant to statute, Cornett may be able to claim a property interest conferred by contract. *Bailey*, 106 F.3d at 141. The Sixth Circuit has explained how a property interest in a government job may arise by contract:

> In Kentucky, unless the parties specifically manifest their intention to condition termination only according to express terms, employment is considered at will. An at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job. However, the parties to an employment contract can make the employment relationship terminable only for cause by clearly stating their intentions to do so···· In this manner, a property interest in a government job may arise.
> *Bailey*, 106 F.3d at 141. (citations and internal quotation marks omitted).

Cornett does not allege that the actual employment contract stated that she could only be terminated for cause, instead, asserts that she and Superintendent Falin created an enforceable oral agreement at the onset of her employment in which she was given four years credit for salary and continuous active service within the meaning of K.R.S. § 161.011. (Rec. No. 32, pg. 23). As discussed above, K.R.S. § 161.011 provides protection for classified employees with four years continuous active service. As evidence of this agreement, Cornett points to the salary chart, attached to her written employment contract. (Rec. No. 32, pg. 20).

In *Bailey*, a former head start administrator sued the county board of education for violations

15

of her due process rights. 106 F.3d 135. The court held that the plaintiff did not have a statutorily created or a contractually created property interest in her position. *Id*. The plaintiff argued that an employee manual created a contractual right to continued employment. The court stated that the "terms of employment contracts depend upon the understanding of the parties as ascertained by inference from their written or oral negotiations and agreements, the usage of business, the situation and objectives of the parties, the nature of the employment, and all circumstances surrounding the transaction." *Id*. at 142 *quoting Shah v. American Synthetic Rubber Corp*., 655 S.W.2d 489, 491 (Ky.1983).

In this case, Cornett claims that she understood the oral negotiations between her and Falin to mean that she was entitled to credit under K.R.S. § 161.011. However, the plain language of K.R.S. § 161.011 exempts Cornett. Furthermore, the only evidence of such an agreement is Falin's handwritten notes on a salary chart indicating that Cornett was to be paid according to a year four payment schedule. However, no mention was made to credit under K.R.S. § 161.011. Kentucky law provides that employment is considered at will, thus no protected property interest exists, "unless the parties specifically manifest their intention to condition termination only according to express terms" and "clearly stating their intentions" to do so. *Bailey*, 106 F.3d at 141. Cornett has failed to provide evidence to establish that she and Falin clearly stated their intention to condition her employment upon Cornett's receipt of credit under KRS § 161.011, thus, Cornett cannot establish a property interest in her employment pursuant to contract.

Cornett has failed to establish a property interest in her employment either pursuant to statute or contract, thus, her claim under the Due Process Clause must fail.

**i. Board of Education Negligent Hiring, Supervising and Retaining Dennis Byrd because they knew or should have known that Byrd would violate Plaintiff's Civil Rights**

Cornett asserts claims against the Williamsburg Board of Education for negligent hiring, supervising and retaining Dennis Byrd because they knew or should have known that Byrd would violate Plaintiff's civil rights. (Rec. No. 1, pg. 9). However, Cornett fails to assert whether these claims are based on federal law and/or Kentucky state law.

In regard to a negligent hiring and supervising claim based on federal law, "respondeat superior is not available as a theory of recovery under section 1983. Rather, she must show that the School Board itself is the wrongdoer. Under *Monell*, the County and the School Board cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right. " *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). Cornett has presented no evidence of an official policy and in order state a claim against the Williamsburg Board of Education for inaction, "[t]he evidence must show that the need to act is so obvious that the School Board's conscious decision not to act can be said to amount to a policy of deliberate indifference to [Plaintiff's] constitutional rights." *See Doe v. Magoffin County Fiscal Court*, 174 Fed. Appx. 962, 966 (6th Cir. 2006)(unpublished)(The plaintiff, a minor, brought a negligent hiring and supervision claim against the county after she was sexually assaulted by a county employee. The court dismissed plaintiff's claim on summary judgment because it was not plainly obvious that the janitor would rape the plaintiff and the plaintiff failed to establish any evidence of an official policy or practice). Cornett has offered no evidence of an official policy or practice of the Williamsburg Board of Education that caused deprivation of her constitutional rights, thus, the claims must be dismissed.

17

Kentucky law recognizes a claims based on negligent hiring and supervision of employees. "[T]his Commonwealth recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998). In order to establish a claim based on Kentucky law, Cornett must show that the Williamsburg Board of Education knew or should have known that Byrd was unfit for his job and that his retention in the job created an unreasonable risk of harm to Cornett. *Id*.

Cornett has provided no evidence to show that Byrd was unfit for his job much less that the Williamsburg Board of Education knew he was unfit. Cornett has failed to provide any evidence to even suggest that the Williamsburg Board of Education even knew of Cornett's gender discrimination allegations against Byrd prior to her termination. Thus, Cornett's negligent hiring, supervision and retention claims must be dismissed because there is simply no evidence to support such a claim based on federal law or Kentucky state law.

**j. Equal Pay Claim**

Defendants assert that the Plaintiff has made a claim pursuant to the Equal Pay Act. (Rec. No. 27, pg. 22). The Court is uncertain as to whether the Plaintiff has even asserted such a claim, however, if such a claim has been asserted by the Plaintiff, the claim must be dismissed.

"To establish a prima facie case under the Equal Pay Act, a plaintiff must show that the defendant paid higher wages to employees of the opposite sex for substantially equal work." *Ambrose v. Summit Polymers, Inc.*, 172 Fed. Appx. 103, 105 (6th Cir. 2006)(unpublished). Cornett has failed to present any evidence to establish a prima facie case under the Equal Pay Act. Cornett has asserted no facts to establish that the Defendants paid male employees higher wages than female

employees for substantially equal work, thus, this claim must be dismissed.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

## IV. CONCLUSION

Accordingly **IT IS ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment (Rec. No. 26) is DENIED as to Plaintiff's gender discrimination claims based on Title VII and the Kentucky Civil Rights Act.

(2) Defendants' Motion for Summary Judgment (Rec. No. 26) is GRANTED as to all other claims asserted by Plaintiff.

(3) Plaintiff's Motion for a Hearing in the matter (Rec. No. 48) is DENIED as MOOT.

This the 28th day of November, 2006.



Signed By:

**_Karen K. Caldwell_**

**United States District Judge**